# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 49489 / 49531

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | Boise, June 2022 Term |
| | ) | |
| v. | ) | Opinion filed: August 23, 2022 |
| | ) | |
| GERALD ROSS PIZZUTO, JR., | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Respondent. | ) | |
| _____ | ) | |
| | ) | |
| GERALD ROSS PIZZUTO, JR., | ) | |
| | ) | |
| Petitioner-Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STATE OF IDAHO, | ) | |
| | ) | |
| Respondent-Appellant. | ) | |

Appeal from the District Court of the Second Judicial District of the State of Idaho, Idaho County. Jay P. Gaskill, District Judge.

The judgments of the district court are reversed and the cases are remanded.

Lawrence G. Wasden, Idaho Attorney General, Boise, for Appellant. L. LaMont Anderson argued.

Federal Defender Services of Idaho, Boise, for Respondent. Jonah Joshua Horwitz argued.

MOELLER, Justice.

Gerald Ross Pizzuto, Jr., was convicted of two brutal murders and sentenced to death in 1986. After the Idaho Commission of Pardons and Parole voted 4-3 to recommend that Pizzuto's death sentence be commuted to life without the possibility of parole, Idaho Governor Brad Little rejected the recommendation, thereby allowing Pizzuto's death sentence to remain in effect. Pizzuto challenged the Governor's action by filing an Idaho Criminal Rule 35(a) motion to correct

1

his sentence and a sixth petition for post-conviction relief. The district court granted both Pizzuto's motion and his petition upon finding Idaho Code section 20-1016, the statute authorizing the Governor's rejection of the Commission's recommendation, was unconstitutional.

The State of Idaho appealed and asked that this matter be heard on an expedited basis, which this Court granted. Governor Little asked to file an amicus curiae brief in support of the State's position, which was also granted. For the reasons set forth below, we reverse the district court and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. Factual and Procedural History

An Idaho County jury convicted Gerald Pizzuto of two counts of first-degree murder for the 1985 killings of Berta and Del Herndon. He was sentenced to death on both counts. This Court affirmed the sentences in 1991. *State v. Pizzuto*, 119 Idaho 742, 810 P.2d 680 (1991). Prior to the instant case, Pizzuto has filed five successive post-conviction petitions, all of which were denied. He was also denied federal habeas corpus relief from his convictions and sentences. *See, e.g., Pizzuto v. Yordy*, 947 F.3d 510 (9th Cir. 2019). Following this Court's most recent denial of post-conviction relief in *Pizzuto v. State*, 168 Idaho 542, 484 P.3d 823 (2021), Pizzuto's stay of execution was lifted and the district court issued the death warrant on May 6, 2021.

Approximately two weeks prior to the issuance of the death warrant, Pizzuto submitted an application for a clemency hearing with the Idaho Commission of Pardons and Parole (the "Commission"). At 66 years old, Pizzuto has been diagnosed with terminal bladder cancer, heart disease, diabetes with related nerve damage, and receives hospice care. He is also confined to a wheelchair. In court pleadings dating back to December 2019, Pizzuto's physicians estimated his life expectancy at only 12 months. The clemency application also recounted Pizzuto's childhood—including appalling accounts of physical and sexual abuse—as well as his current, declining health conditions.

In May 2021, the Commission granted Pizzuto's request for a commutation hearing, scheduling it for its November session. Based on the parties' joint motion, the district court ordered a stay of execution until the Commission rendered a decision. On December 30, 2021, the Commission issued its recommendation: "The Commission is recommending by a majority decision that Governor Little grant the commutation of Gerald Ross Pizzuto's two death sentences . . . to life without the possibility of parole." Four commissioners voted in favor of the

2

recommendation, while three commissioners opposed it. Pursuant to Idaho Code section 20-1016, the Commission forwarded this recommendation to Governor Little, explaining the majority vote was "one of mercy due to Mr. Pizzuto's current medical condition and evidence of his decreased intellectual functioning." Because Pizzuto has advanced terminal cancer, in addition to other medical conditions, the majority concluded that Pizzuto's condition "leaves him as very little threat to others." Three commissioners dissented, explaining "[t]he cruel and heinous nature of Mr. Pizzuto's crimes and his lack of responsibility, accountability, and credibility warrant imposition of the original sentence imposed."

Upon receiving the Commission's recommendation, Governor Little denied it in writing that same day. Pizzuto then filed two motions before the district court: a motion to preclude the issuance of a death warrant and a motion to correct his sentence under Idaho Criminal Rule 35(a). Pizzuto argued before the district court that his death sentences were illegal under the Idaho Constitution due to the Commission's decision recommending commutation, and that "Article IV, section 7 of the Idaho Constitution places the commutation power exclusively in the hands of the Commission." While the Governor "claimed to have overruled the Commission's determination," Pizzuto asserts that "he had no authority to do so under the Idaho Constitution."

The district court heard Pizzuto's motions on January 20, 2022, and subsequently granted both. The court first determined that the constitutional language, "only as provided by statute," was ambiguous. It agreed with Pizzuto's interpretation and ultimately concluded that the legislature cannot "usurp the Commission's power and shift their decision making authority to the governor." Thus, the court concluded that Pizzuto's death sentences were "illegal" "in light of the Commission's decision that the sentences should be commuted to life in prison without parole." The State timely appealed.

Overlapping the pending appeal, Pizzuto also filed a sixth successive post-conviction relief action pursuant to Idaho Code section 19-4901(a)(3). The State filed a motion for summary dismissal of the post-conviction petition. The district court denied the State's motion and granted Pizzuto's petition "because the death sentences exceed the maximum authorized by law." The district court concluded that post-conviction relief was appropriate on the same grounds "set forth in the Rule 35 motion," and relied on its earlier constitutional analysis to grant Pizzuto post-conviction relief. The State again timely appealed the district court's order. This Court then ordered that both matters be consolidated for appeal.

3

**B. Constitutional History of the Commutation Power in Idaho**

Like most states, in Idaho the power to pardon or commute a sentence has long been associated with the executive branch. It is set forth in Article IV, section 7 of the Idaho Constitution as part of the powers delegated to the executive branch by the people and "was adopted at the 1889 constitutional convention without debate or amendment." *State v. Winkler*, 167 Idaho 527, 531, 473 P.3d 796, 800 (2020). To govern the use of this power, the Idaho Constitution originally created a "board of pardons" (the "Board"), which then consisted of only three members: the Governor, Secretary of State, and Attorney General. *Ex parte Prout*, 12 Idaho 494, 497, 86 P. 275, 275 (1906). Notably, the three original members were all constitutional officers elected by the people. Article IV, section 7 of the Idaho Constitution historically provided:

> The Governor, Secretary of State, and Attorney General shall constitute a board to be known as the "Board of Pardons." Said board or a majority thereof shall have power to remit fines and forfeitures, and to grant commutations and pardons after conviction and judgment either absolutely or upon such conditions as they may impose in all cases of offenses against the state except treason or conviction on impeachment.

*Id.* (quoting IDAHO CONST. art. IV, § 7 (subsequently amended in 1945 and 1986)). Thus, the original intent of the framers of the Idaho Constitution was for the Governor to play a major role in all clemency matters presented to the Board.

In 1942 and 1944, two proposed amendments to Article IV, section 7 were adopted by the legislature, but were defeated by a majority vote of the electorate. These amendments proposed dissolving the Board and vesting all commutation powers with only the governor. Instead, the first approved amendment to Article IV, section 7 of the Idaho Constitution came in 1945, with Idaho voters ratifying the amendment on November 5, 1946. The pardoning power of the Board was amended as follows:

> From and after July 1, 1947, such board as may hereafter be created or provided by legislative enactment shall constitute a board to be known as the board of pardons. Said board, or a majority thereof, shall have power to remit fines and forfeitures, and to grant commutations and pardons after conviction and judgment, either absolutely or upon such conditions as they may impose in all cases of offenses against the state except treason or conviction on impeachment.

S.J.Res. 3, S.L. 1945, 400–01. As a result, the Board no longer consisted of the governor, secretary of state, and attorney general. Rather, the amended Idaho Constitution permitted the legislature to create a new board of pardons whose appointed members would have the power "to grant

4

commutations and pardons after conviction and judgment." *Id. See also Carman v. State*, *Comm'n of Pardons & Parole*, 119 Idaho 642, 643, 809 P.2d 503, 504 (1991).

To implement these changes, the legislature created the three-member State Board of Correction in 1947 to "constitute the State Board of Pardons," having "all rights, powers and authority of said Board of Pardons" under the Idaho Constitution. H.B. 76, S.L. 1947, ch. 53, §§ 1 and 10 (then designated as I.C. § 20-201). In 1969, the legislature enacted Idaho Code section 20-210, which directed the Board of Correction to appoint five members to a newly created Idaho Commission of Pardons and Parole, which would exercise "all rights, powers and authority of said board of pardons as are granted and provided by the provisions of the constitution of the state of Idaho." S.B. 1184, S.L. 1969, ch. 97, § 5.[1] Thus, from 1947 until 1986, the pardon power was solely vested in the Board, operating first as a three-member board, then later as a five-member commission.

In the following years, dissatisfaction with the Commission grew and many pushed for a more politically accountable body to exercise the commutation and pardon powers. As a result, the Idaho Legislature passed and presented another constitutional amendment to the public in 1986. Known as Senate Joint Resolution 107, this proposal to amend Article IV, section 7 of the Constitution passed both houses of the Idaho Legislature and was ultimately ratified by the electors of Idaho at the general election held November 4, 1986. The 1986 amendment inserted the words "only as provided by statute" into the first paragraph of Article IV, section 7, to read:

> Such board as may hereafter be created or provided by legislative enactment shall constitute a board to be known as the board of pardons. Said board, or a majority thereof, shall have power to remit fines and forfeitures, and, only as provided by statute, to grant commutations and pardons after conviction and judgment, either absolutely or upon such conditions as they may impose in all cases of offenses against the state except treason or conviction on impeachment.

IDAHO CONST. art. IV, § 7.

In 1988, the legislature acted upon its newly granted constitutional authority by adopting a statute providing operative direction to the Board: Idaho Code section 20-240, which has since been redesignated as Idaho Code section 20-1016. S.B. 1468, S.L. 1988, ch. 323, § 1; H.B. 427,

---

[1] Thirty years later, in 1999, the legislature amended Idaho Code section 20-1002 to give the governor the power to appoint the members of the Commission. S.B. 1110, S.L. 1999, ch. 311, § 1. In 2017, the legislature again expanded the Commission, this time from five members to seven. S.B. 1113, S.L. 2017, ch. 182, § 1 (amending I.C. § 20-210, currently redesignated as I.C. § 20-1002).

S.L. 2020, ch. 62, §§ 1, 2; H.B. 150, S.L. 2021, ch. 196, §§ 17, 18. Idaho Code section 20-240 was also amended between its 1988 enactment and today. In 1988, Idaho Code section 20-240 originally provided:

> The commission shall have full and final authority to grant commutations and pardons except with respect to sentences for murder, voluntary manslaughter, rape, kidnapping, lewd and lascivious conduct with a minor child, and manufacture or delivery of controlled substances. The commission shall conduct commutation and pardon proceedings pursuant to rules and regulations adopted in accordance with law and may attach such conditions as it deems appropriate in granting pardons or commutations. With respect to commutations and pardons for the offenses named above, the commission's determination shall only constitute a recommendation subject to approval or disapproval by the governor. No commutation or pardon for such named offenses shall be effective until presented to and approved by the governor. Any commutation or pardon recommendation not so approved within thirty (30) days of the commission's recommendation shall be deemed denied.

From 1988 to 2020, section 20-240 gave the governor the power to review the commission's recommendations in a wide variety of serious cases. In 2020, the legislature further amended this provision and in 2021, it redesignated the statute as section 20-1016. The most recent amendments further limited the type of cases the governor was required to review. Today, gubernatorial review is only required when the Commission recommends a commutation or a pardon in a case where the maximum underlying sentence is either life imprisonment or the death penalty.[2] I.C. § 20-1016. It is the constitutionality of this version of the statute which forms the basis of the State's appeals.

## II. STANDARD OF REVIEW

This Court freely reviews constitutional issues and questions of statutory interpretation because they are questions of law. *State v. Winkler*, 167 Idaho 527, 529, 473 P.3d 796, 798 (2020); *Ybarra v. Legislature by Bedke*, 166 Idaho 902, 907, 466 P.3d 421, 426 (2020). "When interpreting constitutional provisions, the fundamental object 'is to ascertain the intent of the drafters by reading the words as written, employing their natural and ordinary meaning, and construing them to fulfill the intent of the drafters.' " *Winkler*, 167 Idaho at 531, 473 P.3d at 800 (quoting *Sweeney v. Otter*, 119 Idaho 135, 139, 804 P.2d 308, 312 (1990)). A constitutional provision is only ambiguous if "reasonable minds might differ or be uncertain as to its meaning." *Id.* However, where the provision is " 'clear and unambiguous,' the expressed intent of the drafters must be

---

[2] We note that subsection 3 of the statute precludes gubernatorial review of clemency decisions in cases involving maximum life sentences for controlled substance offenses and persistent violators. I.C. § 20-1016(3).

given effect." *Id.* If the reviewing court finds the provision to be ambiguous, only then can it utilize the rules of statutory construction "to determine and give effect to the legislative intent." *Reclaim Idaho v. Denney*, 169 Idaho 406, 427, 497 P.3d 160, 181 (2021).

"The judicial power to declare legislative action unconstitutional should be exercised only in clear cases." *Leavitt v. Craven*, 154 Idaho 661, 665, 302 P.3d 1, 5 (2012). For there is a "strong presumption of validity," and the challenging party bears the burden of overcoming that presumption. *Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 709, 791 P.2d 1285, 1288 (1990). Thus, "any doubt concerning interpretation of a statute is to be resolved in favor of that which will render the statute constitutional." *Id.*

### III. ANALYSIS

Although the facts of this case unavoidably touch upon the death penalty, at its core this case presents a straightforward question of constitutional and statutory construction. It concerns the constitutionality of Idaho Code section 20-1016 and whether Governor Little had the authority to reject the Commission's recommendation to commute Pizzuto's death sentences. Importantly, this is not a question of whether the Governor has overstepped his statutory authority; no one contends that the Governor acted inconsistently with the authority granted him under Idaho Code section 20-1016. Rather, the question before us is whether the Idaho Legislature violated the Idaho Constitution by adopting section 20-1016, which effectively grants the Governor power to review the Commission's recommendation in cases "for which the maximum punishment allowed by law at the time of sentencing is death or life imprisonment." I.C. § 20-1016.

This is an issue of first impression for this Court. In its appeal, the State contends that Idaho Code section 20-1016 is wholly constitutional. It argues that the 1986 Amendment to Article IV, section 7 of the Idaho Constitution unambiguously "convey[ed] upon the Legislature the sole power to determine how and when commutations and pardons can be provided." In response, Pizzuto argues that section 20-1016 is unconstitutional because the Idaho Constitution provides that "the *Commission* 'shall have [the] power . . . to grant commutations.' " As such, Pizzuto argues that the Commission "alone [holds] the commutation power, and the Governor was not permitted by the Constitution to usurp it." Importantly, despite the district court's determination that the constitutional language was ambiguous, both the State and Pizzuto argue on appeal that the constitutional provision is unambiguous, and its plain language supports their respective interpretations of the commutation powers.

7

### A. Idaho Code section 20-1016 is a constitutional expression of the authority granted to the Legislature in Article IV, section 7.

We begin our analysis by recognizing that the power of clemency is a significant "part of the Constitutional scheme." *Biddle v. Perovich*, 274 U.S. 480, 486 (1927). Like pardons, "commutation is an act of grace and a matter of discretion, and may be refused." *State v. Evans*, 73 Idaho 50, 60, 245 P.2d 788, 794 (1952).[3] It "is a discretionary grant of executive clemency" and one "exercised sparingly" "[a]s a matter of comity between branches of government." *State v. Salsgiver*, 112 Idaho 933, 935 n.3, 736 P.2d 1387, 1389 n.3 (Ct. App. 1987).

As demonstrated since statehood, the power to grant pardons and commutations in Idaho has always been vested in the executive branch. IDAHO CONST. art. IV, § 7. As last amended in 1986, Article IV, section 7 places "the pardoning power" with the Idaho Commission of Pardons and Parole, an executive branch agency whose members are appointed by the governor and confirmed by the senate. I.C. § 20-1002 (establishing that the governor shall appoint a seven-member commission and the executive director, with each member serving a three-year term). The legislature created the Commission "[i]n accordance with the state constitution's requirement that the legislature create a board of pardons responsible for exercising the pardon power." *Winkler*, 167 Idaho at 529, 473 P.3d at 798. Thus, the Commission of Pardons and Parole operates as the "board of pardons" listed in the Idaho Constitution. *Id.* The Commission's duties are set forth as follows:

> Such board as may hereafter be created or provided by legislative enactment shall constitute a board to be known as the board of pardons. Said board, or a majority thereof, shall have power to remit fines and forfeitures, *and, only as provided by statute, to grant commutations and pardons after conviction and judgment*, either absolutely or upon such conditions as they may impose in all cases of offenses against the state except treason or conviction on impeachment. The legislature shall by law prescribe the sessions of said board and the manner in which application shall be made, and regulated proceedings thereon, but no fine or

---

[3] *See also* Mary Margaret Giannini, *Measured Mercy: Managing the Intersection of Executive Pardon Power and Victims' Rights with Procedural Justice Principles*, 13 OHIO ST. J. CRIM. L. 89, 122 (2015) ("Federal and state laws overwhelmingly treat pardon practice as a discretionary executive activity outside the normal checks and balances of our government branches. Only in the narrowest of situations have courts willingly reviewed, much less overturned, pardon decisions or the lack thereof. Characteristic of the courts' analyses is a recognition that pardons are driven by discretion and grace, as well as shielded from judicial review through separation of powers and the political question doctrine. Hence, to the extent a more retributive-focused version of pardon practice might encourage more attention on victim interests, the wall of grace stands in the way."); Jonathan T. Menitove, *The Problematic Presidential Pardon: A Proposal for Reforming Federal Clemency*, 3 HARV. L. & POL'Y REV. 447, 448 (2009) ("While clemency power is by no means unique to the American system of government, the seemingly unchecked nature of this power establishes executive clemency as somewhat of a constitutional anomaly outside the system of checks and balances.").

forfeiture shall be remitted, and no commutation or pardon granted, except by the decision of a majority of said board, after a full hearing in open session, and until previous notice of the time and place of such hearing and the release applied for shall have been given by publication in some newspaper of general circulation at least once a week for four weeks. The proceedings and decision of the board shall be reduced to writing and with their reasons for their action in each case, and the dissent of any member who may disagree, signed by him, and filed, with all papers used upon the hearing, in the office of the secretary of state.

The governor shall have power to grant respites or reprieves in all cases of convictions for offenses against the state, except treason or conviction on impeachment, but such respites or reprieves shall not extend beyond the next session of the board of pardons; and such board shall at such session continue or determine such respite or reprieve, or they may commute or pardon the offense, as herein provided. In cases of conviction for treason the governor shall have the power to suspend the execution of the sentence until the case shall be reported to the legislature at its next regular session, when the legislature shall either pardon or commute the sentence, direct its execution, or grant a further reprieve.

IDAHO CONST. art. IV, § 7 (emphasis added).

The Idaho Legislature, acting pursuant to the "only as provided by statute" language in the Constitution, enacted Idaho Code section 20-1016, which sets forth how the commutation and pardon powers are wielded by the Commission. Section 20-1016 requires gubernatorial approval of commutations in the circumstances of life and death sentences. It states:

(1) The commission shall have full and final authority to grant commutations and pardons after conviction and judgment in all cases of offenses against the state except treason or impeachment and as otherwise provided in this section.

(2) With respect to commutations and pardons for offenses, or conspiracies to commit any offense, for which *the maximum punishment allowed by law at the time of sentencing is death or life imprisonment*, the commission's determination shall *only constitute a recommendation* subject to approval or disapproval by the governor. *No commutation or pardon for such offenses shall be effective until presented to and approved by the governor.* Any commutation or pardon recommendation not so approved within thirty (30) days of the commission's recommendation shall be deemed denied.

I.C. § 20-1016 (emphasis added). Accordingly, under section 20-1016, the Commission has full power to grant commutations except "as otherwise provided" by statute for certain offenses and sentencing conditions. I.C. § 20-1016. These exceptions include commutations "for which the maximum punishment allowed by law at the time of sentencing is death or life imprisonment." *Id.* In such circumstances, the Commission still conducts the commutation proceedings pursuant to its

9

rules and regulations, but its final "determination shall only constitute a recommendation subject to approval or disapproval by the governor." IDAHO CONST. art. IV, § 7; I.C. § 20-1016(2) and (4).

There is no debate that Pizzuto's commutation falls under the requirements of Idaho Code section 20-1016(2). As a capital case, with Pizzuto facing two death sentences, the statute mandates that the Commission's determination "shall only constitute a recommendation subject to approval or disapproval by the governor." I.C. § 20-1016(2). At issue in this appeal is whether a conflict exists between Idaho Code section 20-1016 and Article IV, section 7 of the Idaho Constitution. More specifically, Pizzuto asserts that the governor's statutory authority to reject a commutation recommendation is unconstitutional. Key to this appeal is the language governing authority for commutations under the Idaho Constitution, which states: "Said board [the Commission], or a majority thereof, shall have power to remit fines and forfeitures, and, *only as provided by statute*, to grant commutations and pardons after conviction and judgment, . . ." IDAHO CONST. art. IV, § 7 (emphasis added). The State and Pizzuto primarily argue over how this language vests constitutional commutation powers among the Commission, Legislature, or Governor, as well as whether Idaho Code section 20-1016 complies with that allocation of powers. Therefore, this is a question of constitutional and statutory interpretation for this Court.

"Generally, the statutory rules of construction apply to the interpretation of constitutional provisions." *Leavitt*, 154 Idaho at 667, 302 P.3d at 7 (internal brackets omitted). When the Court interprets statutes, it begins "with the literal words of a statute, which are the best guide to determining legislative intent." *Id.* "Where a statute is clear and unambiguous the expressed intent of the legislature must be given effect." *Id.* (citing *McNeal v. Idaho Pub. Utilities Comm'n*, 142 Idaho 685, 690–91, 132 P.3d 442, 447–48 (2006)). A constitutional provision is ambiguous if "reasonable minds might differ or be uncertain as to its meaning." *Winkler*, 167 Idaho at 531, 473 P.3d at 800. Nevertheless, a statute "is not ambiguous merely because the parties present differing interpretations to the court." *State v. Thiel*, 158 Idaho 103, 107, 343 P.3d 1110, 1114 (2015) (citation and quotation marks omitted). In interpreting the Constitution, we are also mindful of our longstanding doctrine that, "whenever possible, a statute should be construed so as to avoid a conflict with the state or federal constitution." *State v. Gomez-Alas*, 167 Idaho 857, 866, 477 P.3d 911, 920 (2020).

Although the district court held otherwise, we agree with the parties that Article IV, section 7 is unambiguous. In reading the grant of commutation power contained in Article IV, section 7,

the Idaho Constitution expressly states that the Commission "shall have power to remit fines and forfeitures, and, *only as provided by statute*, to grant commutations and pardons after conviction and judgment." IDAHO CONST. art. IV, § 7 (emphasis added). Thus, the Commission's power to grant a commutation is unambiguously restricted by strong language—the Commission "shall have [the] power . . . only as provided by statute." IDAHO CONST. art. IV, § 7. The "by statute" language authorizes the legislature to enact statutes governing when and how the Commission has the power to grant a commutation. This corresponds with the legislature's additional constitutional powers to create the board of pardons, as well as "prescribe the sessions of said board and the manner in which application shall be made," and regulate proceedings. *Id.*

Importantly, Article IV, section 7 not only gives the legislature authority to define and govern the commutation process by statute, the first sentence also clearly gives the legislature the power to "create" the board itself. IDAHO CONST. art. IV, § 7 ("Such board as may hereafter be created or provided by legislative enactment shall constitute a board to be known as the board of pardons."). Implicit in this power to "create" the Board is the power to limit or expand the scope of its operations. If the Constitution authorizes the legislature to "create" a board, logic dictates the legislature it also authorized to "recreate" the board by modifying its structure and operations. In the past, this has included the legislature's authority to set the number of Commission members, place power in the governor to appoint the commissioners and executive director, and establish the term length each commissioner serves, with each provision codified in Idaho law. I.C. § 20-1002. In short, the Commission is not a static constitutional structure; its makeup and functioning is subject to ongoing legislative refinement.

Furthermore, the use of the word "only" in Article IV, section 7 is significant. The phrase "only as provided by statute" modifies the clause "to grant commutations and pardons after conviction and judgment." *Id.* Thus, the word "only" showcases the people's intent to oversee the use of the commutation power through statutory governance. In other words, when Idaho voters adopted the 1986 amendment, they preserved the constitutional *power* of the Commission to grant a commutation while ensuring that the extent and the manner by which that power is used became subject to legislative governance "as provided by statute." IDAHO CONST. art. IV, § 7. *See also Winkler*, 167 Idaho at 529–30, 473 P.3d at 798–99.

This Court reached a similar conclusion in *State v. Winkler*, where we examined Article IV, section 7 in the context of the Commission's decision to pardon a person convicted of driving

11

under the influence of alcohol. 167 Idaho 527, 473 P.3d 796. Following a subsequent DUI charge, the State sought to enhance Winkler's misdemeanor to a felony DUI under the theory that the earlier pardoned DUI conviction actually made it Winkler's third DUI conviction. 167 Idaho at 528, 473 P.3d at 797. As this Court looked to whether a pardon issued by the Commission prevented Idaho Code section 18-8005(9) from applying to a prior felony DUI, we conducted an interpretation of the pardon power under Article IV, section 7. *Id.* at 529–33, 473 P.3d at 798–802.

Applicable here are two holdings from *Winkler*. First, we held that "the Commission's power to grant pardons is a constitutional power." *Id.* at 529–30, 473 P.3d at 798–99. The pardon power and the commutation power are vested under the same language: "Said board [the Commission], or a majority thereof, shall have power . . . only as provided by statute, *to grant commutations and pardons* after conviction and judgment." Thus, the Commission's power to grant commutations is also a constitutional power. *See id.* at 529–30, 473 P.3d at 798–99. Second, we explained how the 1986 amendment dramatically changed the scope of the Commission's constitutional powers: "Before Article IV, section 7 was amended, the executive branch had mostly unfettered discretion in determining whether to grant a pardon." *Id.* at 530, 473 P.3d at 799. However, the 1986 amendment "limit[ed] the executive branch's power to grant pardons 'only as provided by statute.' " *Id.*

The *Winkler* Court proceeded to analyze the legislative provisions on the Commission's pardon power:

> At the time Winkler was pardoned, Idaho Code section 20-240 was the statute used by the legislature to provide for the Commission's pardon power. *See* I.C. § 20-240 (1988) (amended 2020). Consistent with the 1986 amendment to Article IV, section 7, Idaho Code section 20-240 provided the Commission with "full and final authority to grant commutations and pardons" except with respect to pardons for a number of listed offenses. Because driving under the influence is not one of the offenses for which the legislature has explicitly limited the Commission's pardon power under section 20-240, Winkler's pardon carries with it the full effect of a pardon as envisioned under the Idaho Constitution.

*Id.* In short, *Winkler* upheld the legislature's authority under Article IV, section 7 to "explicitly limit" and govern the executive branch's constitutional powers of granting commutation and pardons. *See id.*; IDAHO CONST. art. IV, § 7. *See also State v. Beason*, 119 Idaho 103, 104–05, 803 P.2d 1009, 1010–11 (Ct. App. 1991) (analyzing the prior constitutional language and noting that the 1986 amendment "place[d] a limitation upon the Commission's commutation power through

12

reference to statutory mandates."). This Court also looked to Idaho Code section 20-240, which "provide[d] for the Commission's pardon power." *Winkler*, 167 Idaho at 530, 473 P.3d at 799.

This is not to say that the legislature's governance over how the executive branch exercises its power to grant pardons and commutations is absolute. The powers to pardon and commute sentences are grounded in constitutional authority that may only be exercised within the executive branch, and those powers are vested in the Commission. The Idaho Constitution grants the following authority to the "board of pardons," which operates as the Commission: "*Such board* as may hereafter be created or provided by legislative enactment shall constitute a board to be known as the *board of pardons. Said board, or a majority thereof, shall have power . . .* only as provided by statute, to grant commutations and pardons after conviction and judgment." IDAHO CONST. art. IV, § 7 (emphasis added). Thus, our question turns to whether the statutory authority granted to the governor in section 20-1016 to "approv[e] or disapprov[e]" of a recommendation falls outside the legislature's bounds to govern the commutation powers "as provided by statute." We hold that it does not.

While Idaho Code section 20-1016 grants the governor authority to approve or disapprove the Commission's recommendation on commuting or pardoning a sentence of life imprisonment or death, it does not grant the governor power to directly commute or pardon anyone. I.C. § 20-1016. Just as a governor cannot directly introduce legislation, the governor cannot initiate clemency proceedings, conduct those proceedings, or independently exercise either the pardon or commutation power. Nor can the governor alter the Commission's recommendation. Rather, the governor—as the only elected official associated with the process—provides an internal check-and-balance in extreme cases where a defendant faces the ultimate punishments of criminal justice: life imprisonment or death. Therefore, even under Idaho Code section 20-1016 the governor's power is limited to either approving or disapproving the recommendation.

Notably, in all other aspects of the clemency process, the authority remains entirely in the hands of the Commission. Only it may initiate and conduct clemency proceedings. Only it may accept or reject a defendant's initial application. And, in all cases not involving life or death sentences, only it "shall have full and final authority to grant commutations and pardons after conviction and judgment." Thus, taken together, we do not perceive Idaho Code section 20-1016 as a legislative usurpation of the Commission's constitutional authority, as Pizzuto contends. Rather, as occurred with the adoption of the 1946 and 1986 Amendments to Article IV, section 7,

13

and the passage of the enabling legislation that followed, the legislature has redefined the operation of the clemency process within the executive branch—this time by allowing for approval by the state's chief executive office for the Commission's recommendation in a narrow category of cases. The current iteration of these provisions clearly demonstrates a policy preference for promoting greater accountability and governance over the clemency process. Undoubtedly, section 20-1016 grants the governor additional authority to reject or approve certain recommendations, but this is the type of determination that Article IV, section 7 now entitles the legislature to make. In sum, because the legislature is constitutionally mandated to "create" a board, it cannot seriously be argued that the legislature has somehow usurped that board by redefining its structure and operation.

Accordingly, we cannot conclude that Idaho Code section 20-1016 is an unlawful usurpation or delegation of constitutional authority, nor is it equivalent to the widespread practice of sister jurisdictions to vest total commutation and pardoning authority with the state's chief executive. *See, e.g.,* ALASKA CONST. art. III, § 21; ARIZ. CONST. art. V, § 5; COLO. CONST. art. IV, § 7; MONT. CONST. art. VI, § 12; OR. CONST. art. V, § 14; WASH. CONST. art. III, § 9. *See also* U.S. Const. art. II, § 2, cl. 1 (granting the President "Power to grant Reprieves and Pardons for Offenses against the United States, except in Cases of Impeachment.") (capitalization in original). Importantly, inasmuch as the Commission acts as an executive branch agency under the auspices of the governor—the state's chief executive pursuant to IDAHO CONST. art. IV, § 5—this type of *intra-branch* allocation of authority granted in section 20-1016 does not raise the same separation of powers concerns as if an *inter-branch* allocation of authority occurred.

Pizzuto recognizes that the language "only as provided by statute" grants the legislature authority to govern the Commission's commutation proceedings, but would ultimately interpret the Constitution as giving the Commission nearly the same "unfettered" power it wielded following the 1946 amendment. He reads the legislature's authority as one to "set policies and procedures for commutations" and maintains that the Commission holds sole and exclusive power over commutations, "as it has done since 1945." We agree with Pizzuto insofar as the words "only as provided by statute" qualify the Commission's power as being subject to legislative governance without eradicating it. However, we cannot ignore that the Constitution itself was amended in 1986, and there would have been no reason to amend it just to provide the legislature with regulatory power it already had. Article IV, section 7 expressly grants authority to the legislature

14

to "prescribe the sessions of [the Commission] and the manner in which application shall be made, and regulated proceedings thereon." IDAHO CONST. art. IV, § 7. *See also Leavitt*, 154 Idaho at 666–67, 302 P.3d at 6–7. Thus, we must read the 1986 amendment as giving the legislature authority that it did not have before.

Additionally, at oral argument, Pizzuto suggested that the legislature's authority to govern the commutation process covers both substantive and procedural matters—such as the possibility of "depriving the Commission of authority to extend clemency to those who have been sentenced to death." That question is not before us today. However, if the legislature can deprive the Commission of its clemency powers, as Pizzuto argued, surely it can modify the process of commutation through an additional procedural step of gubernatorial review.

In interpreting constitutional provisions, we must give effect "to all the words and provisions of the statute so that none will be void, superfluous, or redundant." *State v. Burke*, 166 Idaho 621, 623, 462 P.3d 599, 601 (2020) (citation omitted). Thus, we cannot conclude, as Pizzuto would have us do, that the Commission now operates as, or nearly as, "unfettered" as it did from 1946 to 1986. Likewise, we cannot agree with the State that the legislature holds unencumbered power to govern clemency. The Constitution is clear: "Said board, or a majority thereof, shall have power . . . only as provided by statute, to grant commutations and pardons after conviction and judgment." IDAHO CONST. art. IV, § 7. To echo the concurrence's analogy: "the legislature can designate the routes, but only the Commission can drive the bus." While we agree with this assessment, we cannot agree that this statutory process—allowing for gubernatorial review of a recommendation from an executive branch agency—is an unconstitutional delegation of the commutation power. The Commission is still driving the bus, so to speak, but implicit in the legislature's authority to "designate the route" is the authority to direct the bus through the governor's office. Thus, the governor's approval or denial of the Commission's recommendation does not usurp the Commission's exercise of its constitutional power.

Pizzuto's view of Article IV, section 7 is founded on the 1946 Amendment's removal of the governor from the Board, without acknowledging the historical truth that the composition and operation of the Board has changed considerably over the years. For example, from the time of statehood until 1946, the governor was actually a member of the Board, along with two other elected constitutional officers. *See Ex parte Prout*, 12 Idaho 494, 497, 86 P. 275, 275–76 (1906). While the 1946 amendment removed the governor and other executive officers from the Board,

15

completely removing the governor from clemency decisions for a time, the 1986 amendment permitted changes by the legislature to determine by statute the manner in which commutations and pardons are considered. *See Meeting on SJR 107 Before the S. Judiciary & Rules Comm.*, 48th Leg. 6 (Jan. 27, 1986); *Meeting on SJR 107 Before the H. Judiciary, Rules and Admin. Comm.*, 48th Leg. 6 (March 19, 1986). Additional statutory changes have since followed that give the governor authority to appoint each Commission member and exercise gubernatorial review over certain commutation and pardon decisions. Thus, we cannot interpret the meaning of the current iteration of Article IV, section 7 without acknowledging that it reflects the next step in a gradual refinement of the clemency process in Idaho, a course which has been ongoing since statehood. Importantly, for most of Idaho's history the governor has played a significant role in this process, although the extent of his power has waxed, waned, and now seemingly waxed again over time. Accordingly, we conclude that Pizzuto's interpretation, which seemingly subordinates the 1986 Amendment to the 1946 Amendment, is not a reasonable construction.

After carefully considering the positions of both sides, we conclude that Idaho Code section 20-1016 is not in conflict with Article IV, section 7 of the Idaho Constitution. In 1986, Idaho voters gave the legislature authority to determine the parameters of how commutations are granted. Therefore, while the commutation power remains wholly vested in the executive branch through the Commission, the 1986 amendment to the Constitution is clear that the legislature now determines how that power operates. This allowed the legislature to include an additional requirement of gubernatorial approval for the commutation of capital offenses. I.C. § 20-1016.

In sum, Idaho Code section 20-1016 is a legislative determination that the Commission's decisions in certain cases—those concerning sentences of life imprisonment or death—should be subject to the approval of the governor, in whom "[t]he supreme executive power of the state is vested" and upon whom rests the duty to "see that the laws are faithfully executed." IDAHO CONST. art. IV, § 5. We conclude that such an approach does not offend the Idaho Constitution and is consistent with the course set by the 1986 amendment to Article IV, section 7, which allowed the legislature to govern the Commission's commutation powers "by statute." *See Winkler*, 167 Idaho at 530, 473 P.3d at 799. Therefore, we hold that Idaho Code section 20-1016, which allows the Governor the final voice in approving or denying recommendations from the Commission in cases involving the most serious offenses, is constitutional.

16

We are mindful that the concurrence raises structural concerns about the current legislative scheme, suggesting that there is not "an effective statute authorizing the Commission to commute Pizzuto's sentence." However, this precise issue was neither briefed nor argued by the parties. The Commission has been operating unchallenged in its current capacity since 1986. Therefore, while the concerns raised by the concurrence may merit further review by the legislature, we conclude that the principles of constitutional avoidance and judicial restraint militate against undermining the Commission's authority when it has not been directly challenged by this appeal.

**B. The rule of lenity does not apply.**

Additionally, Pizzuto raises an argument for the first time on appeal that the rule of lenity should apply in this case because "there is a 'grievous ambiguity or uncertainty' in the clause."[4] Per our longstanding doctrine, we do not ordinarily address issues that are raised for the first time on appeal. *State v. Gertsch*, 137 Idaho 387, 395, 49 P.3d 392, 400 (2002); *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). Claims of error must be raised before the lower court for our consideration here. *See In re Doe*, 156 Idaho 682, 687, 330 P.3d 1040, 1045 (2014). Nevertheless, because this is a death penalty case, and our refusal to decide this issue might result in it being raised again in a future proceeding, we will exercise our prerogative and briefly address it now.

The rule of lenity, as defined by the United State Supreme Court, means that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Rewis v. United States*, 401 U.S. 808, 812 (1971). In Idaho, our Court of Appeals has explained that "if a *criminal statute* is ambiguous, the rule of lenity applies and the statute must be construed in favor of the accused." *State v. Bradshaw*, 155 Idaho 437, 440, 313 P.3d 765, 768 (Ct. App. 2013) (emphasis added). The rule of lenity is meant to protect defendants who might unknowingly commit criminal acts under highly ambiguous laws. *See Herrera-Brito*, 131 Idaho at 386–87, 957 P.2d at 1102–03.

This case does not concern a statute making any act a crime or imposing a particular sentence for a crime; rather, it addresses the proper allocation of constitutional powers. Idaho courts have never applied the rule of lenity to a constitutional provision, let alone a purely procedural one, and we decline to do so here. While commutations and pardons will always be exercised in the context of criminal law, that does not change the fact that the provisions in this

---

[4] This would appear to contradict Pizzuto's earlier assertion that the constitutional and statutory language at issue is "unambiguous."

case concern constitutional structures and powers. It cannot be reasonably asserted that the rule of lenity has any application here because these provisions do not define criminal acts or set forth potential penalties.

Furthermore, the rule of lenity only applies where the law is "grievous[ly] ambiguous," meaning the statute's uncertainty "is not resolved by looking at the text, context, history or policy of the statute." *Bradshaw*, 155 Idaho at 440, 313 P.3d at 768. As we previously concluded, there is no ambiguity in Article IV, section 7. Thus, Pizzuto's rule of lenity argument fails on appeal.

## IV. CONCLUSION

For the foregoing reasons, we conclude that the district court erred in granting both Pizzuto's Rule 35(a) motion and his petition for post-conviction relief. Both decisions were based on the erroneous grounds that Governor Little lacked authority to reject the Commission's clemency recommendation because Idaho Code section 20-1016 is unconstitutional. We disagree. Because the 1986 amendment to Article IV, section 7, authorizes the legislature to govern the Commission's commutation powers "by statute," and Idaho Code section 20-1016 is a proper expression of that authority, we reverse the district court's orders and remand Pizzuto's cases for further proceedings consistent with this opinion.

Chief Justice BEVAN and Justice STEGNER **CONCUR.**

HORTON, J. *pro tem*, specially concurring.

I concur in the Court's decision to reverse the trial court's orders granting I.C.R. 35 relief and precluding issuance of the death warrant and the judgment granting post-conviction relief. I write separately because I disagree with the Court's determination that Idaho Code section 20-1016(2) (hereinafter "subsection (2)") passes constitutional muster.

I agree with the Court's analysis of Article IV, section 7 of the Idaho Constitution and share the conviction that, following the 1986 amendment, the Commission[5] possesses the power to grant commutations and pardons only to the extent that there is statutory authority to do so. I specifically agree with the following statements in the Court's decision:

> [T]he Commission's power to grant a commutation is unambiguously restricted by strong language—the Commission "shall have [the] power . . . only as provided by statute." IDAHO CONST. art. IV, § 7. The "by statute" language

---

[5] As did the Court, I will refer to the Idaho Commission of Pardons and Parole as "the Commission." The Commission is "the board of pardons" referred to in Article IV, section 7 of the Idaho Constitution. Accordingly, I will use "the Commission" in lieu of "the board of pardons" and the Commission's predecessor the "State Board of Pardons"

authorizes the legislature to enact statutes governing when and how the Commission has the power to grant a commutation.

* * *

Furthermore, the use of the word "only" in Article IV, section 7 is significant. The phrase "only as provided by statute" modifies the clause "to grant commutations and pardons after conviction and judgment." *Id.* Thus, the word "only" showcases the people's intent to oversee the use of the commutation power through statutory governance. In other words, when Idaho voters adopted the 1986 amendment, they preserved the constitutional *power* of the Commission to grant a commutation while ensuring that the extent and the manner by which that power is used became subject to legislative governance "as provided by statute." IDAHO CONST. art. IV, § 7.

I note that the Court's reasoning implicitly rejects the State's analysis of the effect of the 1986 amendment. The State contends the 1986 amendment deprived the Commission of authority over all commutations and vested it in the legislature, which could then reallocate the commutation authority as it pleased. Article IV, section 7 cannot reasonably be read this way. This is the full sentence of Article IV, section 7 that explains who shall have the power to grant clemency:

> [The Commission], or a majority thereof, shall have power to remit fines and forfeitures, and, only as provided by statute, to grant commutations and pardons after conviction and judgment, either absolutely or upon such conditions as they may impose in all cases of offenses against the state except treason or conviction on impeachment.

The subject of this sentence is "[The Commission], or a majority thereof." The verb is "shall have." There are two direct objects explaining what it is that the Commission "shall have." The first direct object is the "power to remit fines and forfeitures." The second direct object is the "[power] to grant commutations and pardons," which is qualified by the restrictive clause "only as provided by statute."

The State's plain language argument asserts that the legislature lurks in this restrictive clause as, effectively, a second subject of the sentence to whom the Constitution directly and affirmatively grants commutation authority. This is wholly unpersuasive. The function of the words "only as provided by statute" is to allow the legislature to place limits on the exercise of the commutation power that the Constitution grants *to the Commission*. The 1986 amendment cannot reasonably be read to vest those powers in the legislature or to allow the legislature to vest them outside the Commission. In short, the Constitution is clear: when it comes to commutations, the legislature can designate the routes, but only the Commission can drive the bus.

19

It is for this reason that I part company with the Court when it concludes that the statutory authority granted to the governor by subsection (2) to "approv[e] or disapprov[e]" a recommendation by the Commission does not violate Article IV, section 7.

Article IV, section 7 grants the Commission the "power to remit fines and forfeitures, and, only as provided by statute, to grant commutations and pardons after conviction and judgment. . . ." I find it significant that this constitutional provision does not explicitly confer authority to the legislature to define which individual or body will possess clemency powers. Instead, those powers are specifically vested in the Commission. Likewise, I find it significant that the language of the constitution does not extend the power to the executive branch broadly, or to the governor specifically. Rather, the only power granted the governor by Article IV, section 7 is the power to delay execution of sentences (grant respites or reprieves) in order to give the Commission or legislature (in cases of treason) the opportunity to determine whether a pardon or commutation is to be granted.

The plain language of Article IV, section 7 grants commutation and pardon powers only to the Commission. This alone, is sufficient for me to conclude that subsection (2)'s purported grant of power to the governor to make the final decision whether to commute or pardon a person convicted of a crime punishable by life imprisonment[6] or death is unconstitutional. However, the constitutional infirmity of subsection (2) is all the more apparent considering a part of the constitutional text that the Court's opinion does not address. The second paragraph of section 7 sets out—and limits—the power the governor has regarding clemency:

> The governor shall have power to grant respites or reprieves in all cases of convictions for offenses against the state, except treason or conviction on impeachment, but such respites or reprieves *shall not extend beyond the next*

---

[6] Footnote 2 of the Court's opinion states that Idaho Code section 20-1016(3) "precludes gubernatorial review of clemency decisions." The statute provides:

> (3) Notwithstanding subsection (2) of this section, the commission shall have full and final authority to grant pardons and commutations for:
>> (a) Any offense in violation of chapter 27, title 37, Idaho Code, for which the maximum punishment allowed by law at the time of sentencing is life imprisonment; and
>> (b) Any offense for which the maximum punishment allowed by law at the time of sentencing is enhanced by chapter 25, title 19, Idaho Code, to life imprisonment.

Although the Court's statement is technically accurate, I do not view this statute as restricting the governor's powers to grant clemency. Rather, I view this statute as an affirmative grant of unqualified authority to the Commission to grant commutations or pardons to those convicted of violating Idaho's controlled substances laws and those found to be persistent violators of the law. The limited powers granted the governor with respect to clemency are found in Article IV, section 7.

20

*session of the board of pardons*; and such board shall at such session continue or determine such respite or reprieve, or they may commute or pardon the offense, as herein provided.

(Emphasis added.) Therefore, subsection (2) does more than impermissibly reallocate the Commission's authority to grant pardons and commutations in the most serious cases, it gives that authority to an officer whose power is expressly limited to granting temporary relief between sessions of the Commission. When enacting subsection (2), the legislature did not drive the bus to the governor's office. It parked the governor in the driver's seat.

I am unable to agree with the majority's conclusion that the delegation of the Commission's authority to the governor is constitutional because clemency powers remain vested within the executive branch. As I have explained, subsection (2) is unconstitutional because it purports to transfer the power to grant pardons and commutations to the governor rather than the Commission. I do not find it important that this misallocation of power occurs within the executive branch. The Constitution has always required that the power to extend mercy be exercised with the collective wisdom and moral judgment of a board, not by a lone executive who is directly subject to political pressures. While the 1986 amendment allows the legislature to cabin that authority, it did not alter to whom it belongs, much less authorize a legislative end run around the Constitution's specific limitation of the governor's power.

Although I disagree with the Court's conclusion regarding the constitutionality of subsection (2), I concur in the result reached by the Court because I do not believe that there is an effective statute authorizing the Commission to commute Pizzuto's sentence.

Following the 1946 amendment to Article IV, section 7 and its creation in 1947, the Commission was vested with the unconditional power "to grant commutations and pardons after conviction and judgment." As noted in the Court's discussion of the constitutional history of the Commission's commutation and pardon powers, dissatisfaction arose regarding the Commission's unfettered powers to commute and pardon offenders.

This dissatisfaction resulted in Idaho's voters amending the constitution to divest the Commission of its unlimited powers of commutation and pardon. The effect of the 1986 amendment was to eliminate the 1946 amendment's self-executing grant of constitutional power to commute sentences and pardon offenders. Instead, the constitution specified that the

21

Commission's authority to grant pardons and commutations would henceforth be "only as provided by statute."[7]

The clause "only as provided by statute" is significant because there must be enabling legislation authorizing the Commission to grant pardons or commutations. In other words, the clause added by the 1986 amendment meant that the Commission would thereafter have only such power to grant commutations and pardons as the legislature deemed fit to confer upon it.[8]

Presently, Idaho Code section 20-1016(1) provides some requisite statutory authorization for the Commission to grant pardons and commutations. However, the broad grant of "full and final authority to grant commutations and pardons after conviction and judgment in all cases of offenses against the state" in the first part of the statute is subject to an important proviso: such authority does not extend to cases of treason or impeachment and, pertinent to the instant appeals, "as otherwise provided in this section [I.C. § 20-1016]."

Significantly, subsection (2) does not grant the Commission the power to pardon offenders or commute sentences of life imprisonment[9] or death. Instead, subsection (2) relegates the Commission's role to an advisory capacity. The statutory declaration that "the commission's determination shall only constitute a recommendation" explicitly minimizes the role of the

---

[7] Given the then-existing dissatisfaction with the Commission, I do not find it particularly noteworthy that the legislature did not provide statutory authorization for the Commission to issue pardons and commutations until the 1988 session. Although the Commission promulgated rules in 1987 regarding commutations and pardons, *see* IDAPA 50.08 (1987), such action could have no legal effect until the legislature granted the Commission such powers as required by Article IV, section 7.

[8] Although this conclusion is based upon the plain language of the amendment, it is worth noting that this conclusion is consistent with the information provided to voters when they were completing their ballots in 1986. The ballot advised voters that the "meaning and purpose" of the amendment was as follows:

> The purpose of this proposed amendment to Section 7, Article IV of the Constitution is to *remove from constitutional status the powers of commutation and pardon, which are held by the Board of Pardons*, and to make the powers of commutation and pardon subject to amendment by statute by the Legislature.

This statement was reiterated on the ballot, which explained that the effect of the amendment:

> Presently, the Board of Pardons has the constitutional powers of commutation and pardon. *Because these powers are constitutional, they cannot be amended or changed by statutory enactment and are not subject to review. If SJR 107 is adopted, the commutation and pardon powers will no longer have a constitutional status; they will be subject to amendment by statutory enactment.* The Legislature would have the authority to set policies and procedures for commutations and pardons and could also review Board commutation and pardon decisions.

(Emphasis added.)

[9] As discussed in the second footnote of this concurrence, Idaho Code section 20-1016(3) is the only statutory authorization for the Commission to grant commutations or pardons for offenses carrying a maximum of life imprisonment.

Commission in derogation of its constitutional role in granting clemency. A "recommendation" is defined as "[a] specific piece of advice about what to do, esp. when given officially." *Recommendation*, BLACK'S LAW DICTIONARY (11th ed. 2019). In other words, subsection (2) defines the Commission's role as limited to providing a suggestion to the party possessing the actual authority to grant clemency. This, of course, is inconsistent with Article IV, section 7 and, as previously explained, the reason I believe that subsection (2) is unconstitutional. However, given that the legislature has not seen fit to extend an affirmative grant of authority for the Commission to grant pardons or commutations for the offenses which Pizzuto stands convicted, I am unable to conclude that the Commission's recommendation of clemency to Governor Little had any legal significance or effect.

My conclusion that the legislature has not seen fit to grant such power to the Commission is buttressed by the history of Idaho Code section 20-1016. Its predecessor, Idaho Code section 20-240, enacted in 1988, originally provided:

> The commission shall have full and final authority to grant commutations and pardons *except with respect to sentences for murder*, voluntary manslaughter, rape, kidnapping, lewd and lascivious conduct with a minor child, and manufacture or delivery of controlled substances. The commission shall conduct commutation and pardon proceedings pursuant to rules and regulations adopted in accordance with law and may attach such conditions as it deems appropriate in granting pardons or commutations. *With respect to commutations and pardons for the offenses named above, the commission's determination shall only constitute a recommendation subject to approval or disapproval by the governor.* No commutation or pardon for such named offenses shall be effective until presented to and approved by the governor. Any commutation or pardon recommendation not so approved within thirty (30) days of the commission's recommendation shall be deemed denied.

(Emphasis added.) The emphasized language clearly reflects that the legislature did not intend to extend power to the Commission to grant pardons or commutations for murder.

This statute remained unchanged until 2020. Then the legislature amended Idaho Code section 20-240 and added a new Idaho Code section 20-240A. Idaho Code section 20-240 was amended to address the governor's powers with regard to clemency:

> (1) The governor shall have power to grant respites or reprieves in all cases of convictions for offenses against the state, except treason or imprisonment on impeachment, but such respites or reprieves shall not extend beyond the next session of the commission; and such commission shall at such session continue or determine such respite or reprieve, or may commute or pardon the offense as herein provided.

23

(2) In cases of conviction of treason, the governor shall have the power to suspend the execution of the sentence until the case shall be reported to the legislature at its next regular session, when the legislature shall either pardon or commute the sentence, direct its execution or grant a further reprieve.

2020 Idaho Sess. Laws, ch. 62, § 1, p. 145. Aspects of the earlier version of Idaho Code section 20-240 relating to the Commission's powers of commutation and pardon were then transferred to the new Idaho Code section 20-240A:

(1) The commission shall have full and final authority to grant commutations and pardons after conviction and judgment in all cases of offenses against the state except treason or impeachment and as otherwise provided in this section.

(2) With respect to commutations and pardons for offenses, or conspiracies to commit any offense, for which the maximum punishment allowed by law at the time of sentencing is death or life imprisonment, the commission's determination shall only constitute a recommendation subject to approval or disapproval by the governor. No commutation or pardon for such offenses shall be effective until presented to and approved by the governor. Any commutation or pardon recommendation not so approved within thirty (30) days of the commission's recommendation shall be deemed denied.

(3) Notwithstanding subsection (2) of this section, the commission shall have full and final authority to grant pardons and commutations for:

(a) Any offense in violation of chapter 27, title 37, Idaho Code, for which the maximum punishment allowed by law at the time of sentencing is life imprisonment; and

(b) Any offense for which the maximum punishment allowed by law at the time of sentencing is enhanced by chapter 25, title 19, Idaho Code, to life imprisonment.

(4) The commission shall conduct commutation and pardon proceedings pursuant to rules and regulations adopted in accordance with law and may attach such conditions as it deems appropriate in granting pardons or commutations.

2020 Idaho Sess. Laws, ch. 62, § 2, p. 145. The following year, the legislature redesignated Idaho Code section 20-240A as Idaho Code section 20-1016 without making any other change to the statute. 2021 Idaho Sess. Laws, ch. 196, § 18, p. 535.

As the foregoing history reveals, since the 1986 amendment, the legislature has not acted to affirmatively grant the Commission the powers of commutation or pardon for murder. To the contrary, the legislature has made it clear that the Commission does not, by itself, have such power. In the absence of legislative action authorizing the Commission to commute Pizzuto's sentence, I believe that the district court erred. Therefore, I concur in the result reached by the Court.

Justice BRODY concurs.

24