**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

GERALD ROSS PIZZUTO, Jr.,

*Petitioner - Appellant*,

v.

RANDY VALLEY, Warden, Idaho
Maximum Security Institution,

*Respondent - Appellee*.

No. 24-6233

D.C. No.
1:22-cv-00452-
BLW

OPINION

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, District Judge, Presiding

Argued and Submitted April 20, 2026
Seattle, Washington

Filed June 5, 2026

Before: Ronald M. Gould, Johnnie B. Rawlinson, and Mark
J. Bennett, Circuit Judges.

Opinion by Judge Bennett

# SUMMARY[*]

## Habeas Corpus / Death Penalty

The panel affirmed the district court's denial of death row inmate Gerald Ross Pizzuto, Jr.'s habeas corpus petition arising from Idaho administrative proceedings denying him clemency and a subsequent state judicial challenge to those proceedings.

The Idaho Commission of Pardons and Parole recommended that Pizzuto's death sentences be commuted to life without the possibility of parole. The Idaho Governor rejected the recommendation. Challenging the Governor's action in state court, Pizzuto contended that the Governor had no authority under the Idaho Constitution to overrule the Commission's recommendation.

The Idaho Supreme Court disagreed. It upheld the state statute which gives the Governor the final say in approving or denying recommendations from the Commission in capital cases. Pizzuto filed a petition for rehearing, asserting that the Idaho Supreme Court's decision amounted to a federal due process violation because the manner in which it denied him relief was unconstitutionally arbitrary. The Idaho Supreme Court denied rehearing.

Pizzuto's federal habeas petition raised the same due process claim. The district court denied the petition, concluding that Pizzuto's claim is not cognizable in federal habeas and, in any event, that it fails on the merits.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Rejecting the State's contention that this court lacks jurisdiction because the district court's grant of the certificate of appealability (COA) was defective, the panel held that its jurisdiction is secure because regardless of whether the district court complied with the threshold requirements under 28 U.S.C. § 2253(c)(2) and (c)(3), it undeniably issued a COA. And the State has failed to show that exceptional circumstances justify vacatur.

The panel held that Pizzuto cannot avoid the presumption that the Idaho Supreme Court's summary denial of rehearing adjudicated his federal claim on the merits. The presumption that the state court adjudicated a claim on the merits does not require a "judgment" or "final determination," and the Idaho Supreme Court's timely resolution of Pizzuto's request for rehearing cannot be interpreted by a federal court as the state court's failure to consider and evaluate Pizzuto's substantive arguments. Thus, deferential review under the Antiterrorism and Effective Death Penalty Act of 1996 is warranted.

Pizzuto contended that the Idaho Supreme Court violated his federal due process right by the manner in which it upheld the Governor's statutory authority to reject the Commission's clemency recommendation.

Because the Idaho Supreme Court's order denying rehearing was unaccompanied by an explanation, the panel needed to determine what theories could have supported the state court's decision, and whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the United States Supreme Court.

The panel held that Pizzuto's claim is not cognizable in federal habeas because it is a challenge to a state court's

interpretation of state law—that the Idaho Supreme Court incorrectly interpreted Idaho clemency law.

The panel held that even assuming Pizzuto raised a cognizable claim, he did not show a federal due process violation based on the manner in which the Idaho Supreme Court denied him relief. Pizzuto cannot establish that the Idaho Supreme Court's decision was contrary to, or involved an unreasonable application of, federal law. Even assuming the Idaho Supreme Court's exercise of judicial review could be considered part of the State's clemency proceedings to which some minimal procedural safeguards apply, the panel failed to see how the Idaho Supreme Court's decision was so arbitrary as to violate due process. Thus, it would not have been unreasonable for the Idaho Supreme Court to conclude that Pizzuto's due process claim lacks merit under the relevant federal precedent.

The panel held that Pizzuto's claim also suffers from a more fundamental flaw. Once Pizzuto accepts the Idaho Supreme Court's interpretation of Idaho law (as he must), it is the *Governor*—not the Idaho Supreme Court—who "deprive[d] [Pizzuto] of the benefits" of the Commission's recommendation. But Pizzuto's contention that the *Idaho Supreme Court* denied him due process requires a separate act of deprivation. If the Idaho Supreme Court correctly articulated Idaho law, no such act exists because Idaho law itself dictated the outcome. As a result, Pizzuto cannot concede the Idaho Supreme Court's articulation of Idaho law and yet still impute the asserted deprivation of liberty to the Idaho Supreme Court.

The panel explained that Pizzuto's reliance on Supreme Court claims involving "arbitrary state action in general" is misplaced.

Applying AEDPA's deferential standard, the panel concluded that Pizzuto did not meet his burden of showing that the Idaho Supreme Court's decision as to his federal due process claim was so erroneous it was beyond any possibility for fairminded disagreement. The Idaho Supreme Court could have reasonably denied Pizzuto's due process claim on the ground that he failed to show the deprivation of a constitutionally protected liberty interest, and the district court thus properly denied habeas relief.

## COUNSEL

Mary E. Spears (argued) and Nicole R. Gabriel, Assistant Federal Public Defenders; Deborah A. Czuba, Supervising Attorney; Capital Habeas Unit, Federal Public Defender's Office, Boise, Idaho; for Petitioner-Appellant.

L. LaMont Anderson (argued), Lead Deputy Attorney General, Capital Litigation Unit, Criminal Law Division; Raúl R. Labrador, Idaho Attorney General; Office of the Idaho Attorney General, Boise, Idaho; for Respondent-Appellee.

## OPINION

BENNETT, Circuit Judge:

An Idaho jury convicted Gerald Ross Pizzuto, Jr., of the 1985 murders of Berta and Del Herndon. The state trial court sentenced him to death on both counts in May 1986, and the Idaho Supreme Court affirmed the sentences. In the decades that followed, Pizzuto has filed many petitions for post-conviction relief—in both state and federal court. And 40 years later, he remains on death row.

Pizzuto again seeks federal habeas relief. This time, his claim arises from Idaho administrative proceedings denying him clemency and a subsequent state judicial challenge to those proceedings. In December 2021, the Idaho Commission of Pardons and Parole recommended that Pizzuto's death sentences be commuted to life without the possibility of parole. Governor Brad Little rejected the recommendation, which kept Pizzuto's death sentences in effect. Pizzuto reacted by challenging the Governor's action in state court. He contended that the Governor had no authority under the Idaho Constitution to overrule the Commission's recommendation.

The Idaho Supreme Court disagreed. It upheld the state statute which gives the Governor the final say in approving or denying recommendations from the Commission in capital cases. Pizzuto filed a petition for rehearing, asserting that the Idaho Supreme Court's decision amounted to a federal due process violation because the manner in which it denied him relief was unconstitutionally arbitrary. The Idaho Supreme Court denied rehearing.

Pizzuto then returned to federal court, invoking 28 U.S.C. § 2254 and raising the same federal due process claim. The district court denied the petition, concluding that Pizzuto's claim is not cognizable in federal habeas and, in any event, that it fails on the merits. This appeal followed. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), and we affirm the denial of habeas relief.

## I

## A

On July 25, 1985, Pizzuto robbed and murdered Berta Herndon and her nephew Del Herndon while they were camping near McCall, Idaho. As the two arrived at their mountain cabin, Pizzuto approached them with a .22 caliber rifle and made them enter the cabin. Once inside, he tied the Herndons' wrists behind their backs and bound their legs in order to steal their money. He later bludgeoned Berta to death with hammer blows to her head. He killed Del by bludgeoning him in the head with a hammer and shooting him between the eyes. Pizzuto murdered the Herndons merely for the sake of killing, and he subsequently joked and bragged about the murders.

As relevant here, a jury convicted Pizzuto of two counts of first-degree murder. The state trial court sentenced him to death in 1986, and the Idaho Supreme Court affirmed. *See State v. Pizzuto*, 810 P.2d 680 (Idaho 1991). Pizzuto has spent the last several decades unsuccessfully challenging his convictions and death sentences. *See, e.g.*, *Pizzuto v. State*, 903 P.2d 58 (Idaho 1995); *Pizzuto v. Arave*, 280 F.3d 949 (9th Cir. 2002), *dissent amended in part by* 385 F.3d 1247 (9th Cir. 2004); *Pizzuto v. State*, 202 P.3d 642 (Idaho 2008); *Pizzuto v. Blades*, 673 F.3d 1003 (9th Cir. 2012); *Pizzuto v.*

*Yordy*, 947 F.3d 510 (9th Cir. 2019) (per curiam); *Pizzuto v. State*, 484 P.3d 823 (Idaho 2021).

His latest collateral attack comes to us against the backdrop of clemency proceedings before the Idaho Commission of Pardons and Parole. On April 19, 2021, Pizzuto submitted a petition for commutation to the Commission. The Commission held a hearing on November 30, 2021. One month later, on December 30, four of seven members of the Commission recommended that Governor Brad Little commute Pizzuto's two death sentences to life without the possibility of parole. The Governor denied the recommendation that same day. In Governor Little's view, "[t]he severity of Pizzuto's brutal, senseless, and indiscriminate killing spree," which included two additional murders committed in a different State shortly before the Herndon murders, "strongly warrants against commutation." Because Idaho Code § 20-1016 requires the Governor to approve the Commission's recommendation for commutation when the maximum sentence is death or life imprisonment, Governor Little's denial retained Pizzuto's death sentences. *See* Idaho Code § 20-1016(2).

Pizzuto then challenged the Governor's decision and the validity of § 20-1016 in state court. He contended that "the Idaho Constitution places the commutation power exclusively in the hands of the Commission." So while Governor Little "claimed to have overruled the Commission's determination," Pizzuto asserted that the Governor "had no authority to do so under the Idaho Constitution." In Pizzuto's view, § 20-1016's requirement that the Governor approve the Commission's recommendation violates Idaho's constitution, and thus his death sentences had been commuted by the Commission.

Though the Idaho trial court agreed with Pizzuto, the Idaho Supreme Court did not. The Idaho Supreme Court held that § 20-1016 does not violate the Idaho Constitution. *See State v. Pizzuto*, 518 P.3d 796, 809 (Idaho 2022). Its conclusion rested on a 1986 amendment to the State's Constitution which restricted the Commission's power to grant commutations by providing that the Commission could do so "only as provided by statute." *Id.* at 804 (quoting Idaho Const. art. IV, § 7).

"In 1986," the Idaho Supreme Court explained, "Idaho voters gave the legislature authority to determine the parameters of how commutations are granted." *Id.* at 807. "[W]hile the commutation power remains wholly vested in the executive branch through the Commission, the 1986 amendment to the Constitution is clear that the legislature now determines how that power operates." *Id.* The constitutional amendment "preserved the constitutional *power* of the Commission to grant a commutation while ensuring that the extent and the manner by which that power is used became subject to legislative governance 'as provided by statute.'" *Id.* at 804 (quoting Idaho Const. art. IV, § 7). And this constitutional provision "allowed the legislature to include an additional requirement of gubernatorial approval for the commutation of capital offenses." *Id.* at 808. Thus, Governor Little's rejection of the Commission's recommendation to commute Pizzuto's death sentences did not violate the Idaho Constitution. *See id.* at 809.

Pizzuto sought rehearing. In relevant part, he argued that the Idaho Supreme Court violated his federal right to due process by "recogniz[ing] a constitutional right to have commutation decisions rendered by the Commission and in the same breath depriv[ing] the Commission of that very

power."   The Idaho Supreme Court summarily denied the petition for rehearing "after due consideration."

**B**

Pizzuto then petitioned for a writ of habeas corpus in federal court under 28 U.S.C. § 2254.  He raised a federal due process claim as the sole ground for relief.  As in his petition for rehearing, Pizzuto asserted that his "death sentences violate the Due Process Clause because the Idaho Supreme Court has unanimously recognized that the Commission . . . has the power under the state constitution to commute death sentences, and yet has deprived him of a commutation despite a majority vote by the Commissioners for life."

The district court granted the State's motion to dismiss. It reasoned that Pizzuto's "entire claim [wa]s based on the premise that the Idaho Supreme Court incorrectly concluded § 20-1016 is consistent with the Idaho Constitution." Because putting "a 'due process' label onto a challenge to Idaho state law is not sufficient to state a cognizable federal constitutional claim," the district court determined that Pizzuto's claim is noncognizable in federal habeas.   The district court also concluded, in the alternative, that even if Pizzuto's claim were cognizable, it would fail on the merits under *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272 (1998).

The district court granted a certificate of appealability ("COA") as to whether Pizzuto's habeas claim is cognizable, but it declined to grant a COA as to the merits.  Pizzuto then moved to alter or amend the judgment under Federal Rule of Civil Procedure 59(e).   He argued that the district court should expand the COA because "the merits of the claim are tied up with the question of whether it is cognizable."   The

district court in turn expanded the COA "to encompass the resolution of this habeas matter."

Pizzuto now appeals the denial of habeas relief.

## II

We first discuss our jurisdiction, as the State contends that we "cannot hear this appeal" because the district court's grant of the COA was defective. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to federal habeas petitions filed after April 24, 1996. *See Murray v. Schriro*, 745 F.3d 984, 996 (9th Cir. 2014). AEDPA "provides that a habeas petitioner must obtain a certificate of appealability (COA) to appeal a federal district court's final order in a habeas proceeding." *Gonzalez v. Thaler*, 565 U.S. 134, 137 (2012) (citing 28 U.S.C. § 2253(c)(1)). The requirement to obtain a COA is jurisdictional. *See id.* at 142.

The statute also contains two "threshold condition[s] for the issuance of a COA." *Id.* at 143. A COA may issue only if the petitioner has made a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the COA "shall indicate which specific issue" satisfies that showing, *id.* § 2253(c)(3). Satisfaction of these threshold conditions is not a jurisdictional requirement. *See Gonzalez*, 565 U.S. at 142–43.

The State contends that we lack jurisdiction because when the district court expanded the COA, it provided "no discussion regarding the standards for issuance of a COA" and "failed to determine whether Pizzuto met the requirements for a COA for each claim—cognizability and the merits of his due process claim." But regardless of whether the district court complied with the threshold

requirements under § 2253(c)(2) and (c)(3), it undeniably *issued* a COA. Thus, our appellate jurisdiction is secure. *See Gonzalez*, 565 U.S. at 142–43.

That said, "the issuance of a COA is not entirely insulated from subsequent judicial scrutiny." *Phelps v. Alameda*, 366 F.3d 722, 728 (9th Cir. 2004). We retain the power to "examine the propriety of a COA" and may vacate or contract it. *See id.* But vacatur requires "exceptional circumstances," such as when the COA encompasses only an alternative holding by the district court—thereby requiring us to "render a ruling without 'any effectual relief whatever.'" *See id.* at 728–30 (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)).

Vacatur is unwarranted here. Unlike in *Phelps*, the COA here now covers both of the district court's alternative dispositive rulings. And the State has failed to show that "exceptional circumstances" justify vacatur because "the parties have already fully briefed the issues it encompasses" and the COA is not "so far off the mark that the certificate is simply invalid on its face." *See id.* at 728; *see also Buie v. McAdory*, 322 F.3d 980, 981 (7th Cir. 2003) ("[O]nce the certificate has been issued, even if erroneously, and the appeal is briefed, there is nothing to be gained from revisiting the adequacy of the certificate.").

### III

We review a district court's denial of habeas relief de novo. *See Lopez v. Thompson*, 202 F.3d 1110, 1116 (9th Cir. 2000) (en banc). Under AEDPA, a federal court may grant habeas relief on a claim that a state court resolved on the merits only when the state court's "decision" was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented" in state court, *id.* § 2254(d)(2).

A state court decision is contrary to Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by th[e Supreme] Court on a question of law or if the state court decides a case differently than th[e Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"These standards require federal courts to give the 'benefit of the doubt' to merits decisions issued by the courts of the sovereign States." *Klein v. Martin*, 607 U.S. 213, 220 (2026) (per curiam) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "So in order to obtain federal habeas relief, a state prisoner must 'show far more' than 'clear error.'" *Id.* (quoting *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (per curiam)). "The habeas claimant must instead establish that the state court 'blunder[ed] so badly that every fairminded jurist would disagree' with the decision." *Id.* at 220–21 (alteration in original) (quoting *Mays v. Hines*, 592 U.S. 385, 392 (2021) (per curiam)).

But this deferential standard of review applies only to claims that have been "adjudicated on the merits in State court." 28 U.S.C. § 2254(d). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-

law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011). This presumption "is a strong one that may be rebutted only in unusual circumstances," but "it is not irrebuttable." *Johnson v. Williams*, 568 U.S. 289, 302 (2013). The Supreme Court has explained that the *Richter* presumption "may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Richter*, 562 U.S. at 99–100. A petitioner cannot, however, rely solely on a "theoretical possibility" or "pure speculation." *Id.* at 100.

Pizzuto presented his federal due process claim to the Idaho Supreme Court in a petition for rehearing, which the Idaho Supreme Court denied. Its denial order provided: "[Pizzuto] having filed a Petition for Rehearing on September 12, 2022, and supporting brief on October 25, 2022, of the Court's Opinion released August 23, 2022; therefore, after due consideration, IT IS HEREBY ORDERED that [Pizzuto]'s Petition for Rehearing be, and is hereby, denied." The parties dispute whether this summary denial constitutes an adjudication on the merits so as to warrant deference under AEDPA.

*First*, Pizzuto contends that because the Idaho Supreme Court's denial of rehearing is not a "judgment" under Idaho law, its decision is entitled to no deference. He relies on an Idaho case explaining that the denial of a petition for rehearing results in the Idaho Supreme Court "adher[ing] to its former decision that becomes the final determination of the case." *Cameron Lumber Co. v. Stack-Gibbs Lumber Co.*, 144 P. 1114, 1115 (Idaho 1914). But *Richter* did not impose any technical requirement of a "judgment" or "final determination." *See* 562 U.S. at 99. The presumption applies "[w]hen a federal claim has been presented to a state

court and the state court has denied relief" in a "summary ruling[]." *Id.* That is what happened here.

*Second*, Pizzuto contends that because the Idaho Supreme Court denied rehearing just three days after he filed his petition, "the evidence supports the conclusion that [it] simply overlooked the due process claim." "If a federal claim is rejected as a result of sheer inadvertence," then it has not been evaluated on the merits for AEDPA purposes. *Johnson*, 568 U.S. at 302–03. But Pizzuto did not "simply mention[] [his federal claim] in passing in a footnote" or "bur[y] [it] in a string cite." *See id.* at 301–02. He raised the claim under its own heading, expressly framed it as a federal due process challenge, and developed it through seven pages of argument with citations to federal case law. *Cf. Sherman v. Gittere*, 92 F.4th 868, 876 (9th Cir. 2024) (finding that the petitioner failed to rebut the *Richter* presumption even when he developed his federal claim "[o]nly in one line of the final paragraph" and "failed to cite a single federal case discussing the constitutional right").

And Pizzuto also cites no authority for the proposition that the time it takes a state court to deny relief is a relevant factor in rebutting the *Richter* presumption. We routinely deny petitions for rehearing within days. *See, e.g.*, Order, *Creech v. Tewalt*, No. 24-978 (9th Cir. Feb. 25, 2024) (denying the petition for rehearing en banc the same day the petition was filed); Order, *Bonete-Lema v. Garland*, No. 17-72568 (9th Cir. June 29, 2021) (denying the petition for panel rehearing the day after the petition was filed); Order, *Galvan v. PHH Mortg. Corp.*, No. 23-60013 (9th Cir. Feb. 22, 2024) (denying the petition for panel rehearing two days after the petition was filed). The Idaho Supreme Court's timely resolution of Pizzuto's request for rehearing cannot be interpreted by a federal court as the state court's

failure to consider and evaluate Pizzuto's substantive arguments. Indeed, a ruling to the contrary would conflict with the federalism principles that underlie AEDPA.

*Third*, Pizzuto observes that the *State* relied on how long it took the Idaho Supreme Court to deny rehearing in arguing to the district court that Pizzuto's claim had been procedurally defaulted. The State pressed that the three-day period between the filing of the petition and the entry of the Idaho Supreme Court's order "would not have allowed for adequate consideration of the merits of Pizzuto's new [federal] claim." So, Pizzuto maintains on appeal, "the State agrees [his] due process claim was not adjudicated on the merits." But the district court rejected the State's procedural default arguments, finding that Idaho "ha[d] not rebutted the *Richter* presumption." And the State's litigation position on procedural default is not *evidence* of how the Idaho Supreme Court resolved the claim. *See Johnson*, 568 U.S. at 301–02 (recognizing that rebuttal of the *Richter* presumption may serve the opposing "purpose[s] of showing that the claim should be considered by the federal court *de novo*" or "that the federal claim should be regarded as procedurally defaulted").

In sum, "[t]here is no reason to think that the [state] court overlooked or failed to resolve" Pizzuto's due process claim. *See Patsalis v. Shinn*, 47 F.4th 1092, 1100 (9th Cir. 2022). Pizzuto cannot avoid the presumption that the Idaho Supreme Court adjudicated his federal claim on the merits. We thus review it under AEDPA's deferential standard.

## IV

As to the merits, Pizzuto contends that the Idaho Supreme Court violated his federal due process right by the manner in which it upheld Governor Little's statutory

authority to reject the Commission's clemency recommendation.

## A

The Idaho Constitution provides that the Commission "shall have [the] power . . . only as provided by statute, to grant commutations and pardons after conviction and judgment." Idaho Const. art. IV, § 7. Interpreting this provision, the Idaho Supreme Court explained that "[t]he phrase 'only as provided by statute' modifies the clause 'to grant commutations and pardons after conviction and judgment.'" *Pizzuto*, 518 P.3d at 804 (quoting Idaho Const. art. IV, § 7). And this language, it continued, "authorizes the legislature to enact statutes governing when and how the Commission has the power to grant a commutation." *Id.*

The Idaho Supreme Court observed that the legislature has enacted such legislation. "The Idaho Legislature, acting pursuant to the 'only as provided by statute' language in the Constitution, enacted Idaho Code section 20-1016, which sets forth how the commutation and pardon powers are wielded by the Commission." *Id.* at 803. As relevant here, § 20-1016 "requires gubernatorial approval of commutations in the circumstances of life and death sentences." *Id.*; *see* Idaho Code § 20-1016(2).

Pizzuto challenged § 20-1016 on the ground that "Article IV, section 7 of the Idaho Constitution places the commutation power exclusively in the hands of the Commission," and "the Governor [i]s not permitted by the Constitution to usurp it." *Pizzuto*, 518 P.3d at 799, 802; *see also id.* at 806 ("[Pizzuto] reads the legislature's authority as one to 'set policies and procedures for commutations' and maintains that the Commission holds sole and exclusive power over commutations, 'as it has done since 1945.'").

But the Idaho Supreme Court rejected the contention that the Idaho Constitution granted Pizzuto—or any Idaho death-row inmate—a right to have their commutation decision decided by the Commission alone.  It held that "section 20-1016, which allows the Governor the final voice in approving or denying recommendations from the Commission in cases involving the most serious offenses, is constitutional." *Id.* at 808.

Article IV, § 7 "authorizes the legislature to govern the Commission's commutation powers 'by statute,' and Idaho Code section 20-1016 is a proper expression of that authority," the Idaho Supreme Court concluded.  *Id.* at 809. "[W]hile the commutation power remains wholly vested in the executive branch through the Commission," it continued, the "only as provided by statute" language "allowed the legislature to include an additional requirement of gubernatorial approval for the commutation of capital offenses."  *Id.* at 807–08.  The Idaho Supreme Court emphasized that "this is the type of determination that Article IV, section 7 . . . entitles the legislature to make." *Id.* at 806.   "[T]he governor—as the only elected official associated with the process—provides an internal check-and-balance in extreme cases where a defendant faces the ultimate punishments of criminal justice: life imprisonment or death."  *Id.*  But "in all other aspects of the clemency process, the authority remains entirely in the hands of the Commission."  *Id.*  "Thus, the governor's approval or denial of the Commission's recommendation does not usurp the Commission's exercise of its constitutional power."  *Id.* at 807.

## B

As Pizzuto reads the opinion, the Idaho Supreme Court "enshrined" in the State's Constitution an expectation that the Commission alone would render commutation decisions. He contends that the Idaho Supreme Court "recognized a state constitutional right to have commutation decisions rendered by the Commission and then in the same breath deprived the Commission of that very power in [his] case" by "nullifying the Commission's majority vote in favor of commuting [his] death sentence." And "[t]he recognition of a right to process and the arbitrary denial of that same right to a particular individual," Pizzuto tells us, "is a quintessential denial of due process." At the same time, Pizzuto insists that he is not challenging "the *correctness*" of the Idaho Supreme Court's interpretation of state law—only "*the manner in which* the [Court] reached its conclusion."

We fail to understand Pizzuto's arguments. First, the Idaho Supreme Court never stated that Pizzuto had a constitutional right to have commutation decisions in capital cases decided by the Commission alone, and second, semantics aside, Pizzuto *is* arguing that the Idaho Supreme Court incorrectly decided Idaho law.

On the latter point, Pizzuto has urged on appeal that the Idaho Supreme Court's "focus on [the] 'only as provided by statute' [language] ignored and gave no effect to the rest of the constitutional provision in which the phrase appears." He has characterized the Idaho Supreme Court's interpretation as "an abandonment of the rules of statutory construction as well as [its] own precedent." Pizzuto has also pressed that "[t]he mandatory language in [Article IV, § 7 of the Idaho Constitution] creates a right to expect that the procedure that the language directs will be followed by

the State." And at oral argument, his counsel criticized the Idaho Supreme Court's construction of Article IV, § 7 on the ground that the Idaho Supreme Court has interpreted similar language in other provisions of the Idaho Constitution differently. *See* Oral Argument at 7:24–9:40. These contentions belie Pizzuto's assertion that he does not dispute the correctness of the Idaho Supreme Court's decision.

## C

Because the Idaho Supreme Court's order denying rehearing was "unaccompanied by an explanation" resolving his federal due process claim, we must determine what theories "could have supported[] the state court's decision." *Richter*, 562 U.S. at 98, 102. From there, we "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102. "If such disagreement is possible, then [Pizzuto]'s claim must be denied." *Sexton v. Beaudreaux*, 585 U.S. 961, 965 (2018) (per curiam).

The district court provided two possible theories that could have led a fairminded jurist to conclude that the denial of Pizzuto's due process claim was not inconsistent with Supreme Court precedent: the claim is not cognizable in federal habeas and it fails on the merits.

"[F]ederal habeas corpus relief," the Supreme Court has emphasized, "does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) ("[A petitioner] may not . . . transform a state-law issue into a federal one merely by asserting a violation of due process."). As discussed, Pizzuto's claim *is* a challenge to a state court's interpretation of state law—that the Idaho Supreme Court incorrectly

interpreted Idaho clemency law.  Thus, his claim is not cognizable.  But even assuming Pizzuto raises a cognizable claim, we conclude that he has not shown a federal due process violation based on the manner in which the Idaho Supreme Court denied him relief.

**D**

"In order to analyze a procedural due process claim, we engage in a two-step analysis: First, we determine whether the inmate was deprived of a constitutionally protected liberty or property interest.  Second, we examine whether that deprivation was accompanied by sufficient procedural protections." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022).  "A liberty interest," the Supreme Court has emphasized, "may arise from the Constitution itself, . . . or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

"The precise contours of our review of a commutation proceeding are unclear." *Creech v. Idaho Comm'n of Pardons & Parole*, 94 F.4th 851, 855 (9th Cir. 2024) (per curiam).  "[N]oncapital defendants do not have a liberty interest in traditional state executive clemency, to which no particular claimant is *entitled* as a matter of state law." *Dist. Att'y's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 67– 68 (2009).  For death row inmates, by contrast, Justice O'Connor's controlling concurrence in *Ohio Adult Parole Authority v. Woodard* concluded "that some *minimal* procedural safeguards apply to clemency proceedings." 523 U.S. 272, 289 (1998) (O'Connor, J., concurring in part and concurring in the judgment); *see Creech*, 94 F.4th at 855 n.1 ("Justice O'Connor's concurring opinion, joined by a

plurality of justices, constitutes the Court's holding in light of Justice Stevens' partial concurrence.").

Justice O'Connor explained there that "[j]udicial intervention *might* . . . be warranted in the face of a scheme whereby a state official flipped a coin to determine whether to grant clemency, or in a case where the State arbitrarily denied a prisoner any access to its clemency process." *Woodard*, 523 U.S. at 289 (O'Connor, J., concurring in part and concurring in the judgment) (emphasis added). Other than Justice O'Connor's hypothetical examples, though, there is no Supreme Court guidance on what clemency procedures are required by the Due Process Clause. Looking to Justice Stevens's separate opinion in *Woodard*, we have "assumed without deciding that 'bribery, personal or political animosity, or the deliberate fabrication of false evidence' may [also] give rise to a commutation-related due process claim." *Creech*, 94 F.4th at 855 (quoting *Anderson v. Davis*, 279 F.3d 674, 676 (9th Cir. 2002)); *see Woodard*, 523 U.S. at 290–91 (Stevens, J., concurring in part and dissenting in part). But "[i]n the absence of such arbitrariness or invidious misconduct, notice of the hearing, notice of the issues to be considered, and an opportunity to participate in a pre-hearing interview generally satisfy the demands of the Due Process Clause." *Creech*, 94 F.4th at 855–56 (citation modified).

Pizzuto cannot establish that the Idaho Supreme Court's decision was contrary to, or involved an unreasonable application of, federal law. *See* 28 U.S.C. § 2254(d)(1). To start, AEDPA bars habeas relief when no prior Supreme Court case provides a "clear answer to the question presented, let alone one in [the petitioner]'s favor." *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *see also Woods v. Donald*, 575 U.S. 312, 317 (2015) (per

curiam).  But put aside that "[t]he Supreme Court has never recognized a case in which clemency proceedings conducted pursuant to a state's executive powers have implicated due process."  *Schad v. Brewer*, 732 F.3d 946, 947 (9th Cir. 2013) (per curiam).  Also put aside that Pizzuto challenges not a state executive branch's denial of clemency but a state court's interpretation of the constitutional and statutory provisions authorizing that denial.  Even assuming the Idaho Supreme Court's exercise of judicial review could be considered part of the State's "clemency proceedings" to which "some *minimal* procedural safeguards apply," *see Woodard*, 523 U.S. at 289 (O'Connor, J., concurring in part and concurring in the judgment), we fail to see how its decision was so arbitrary as to violate due process.

Idaho did not deny Pizzuto access to the State's clemency process, and state officials did not flip a coin to determine whether to commute his sentences. *See id*.  Nor does Pizzuto allege any bribery, personal or political animosity, or fabrication of false evidence. *See Creech*, 94 F.4th at 855.  Rather, the Governor rejected the Commission's commutation recommendation based on the severity of Pizzuto's crimes.  The Idaho Supreme Court upheld the Governor's decision under state law.  And the Idaho Supreme Court did so in a thoughtful, reasoned opinion after hearing oral argument.  Pizzuto has not remotely shown the type of arbitrariness or misconduct that *Woodard* contemplates.  Thus, it would not have been unreasonable for the Idaho Supreme Court to conclude that Pizzuto's due process claim lacks merit under the relevant federal precedent.

Pizzuto's claim also suffers from a more fundamental flaw.  Recall that the state actor who Pizzuto contends deprived him of a constitutionally protected liberty interest

is the Idaho Supreme Court—not the Governor or the Commission. He argues that the Idaho Supreme Court violated his right to federal due process by "admit[ting] that the Commission is the constitutionally empowered commutation actor" under state law but "then strip[ping] [him] of the benefit of a decision rendered by that very body." Remember too that Pizzuto concedes "the *correctness* of the [Idaho Supreme Court's] ruling." By his own admission, then, the Idaho Supreme Court correctly held that the governor's authority to reject a clemency recommendation does not violate the Idaho Constitution. *See Pizzuto*, 518 P.3d at 809. So the Governor's rejection in Pizzuto's own case necessarily complied with state law.

Once Pizzuto accepts the Idaho Supreme Court's interpretation of Idaho law (as he must), it is the *Governor*— not the Idaho Supreme Court—who "deprive[d] [Pizzuto] of the benefits" of the Commission's recommendation. But Pizzuto's contention that the *Idaho Supreme Court* denied him due process requires a separate act of deprivation. If the Idaho Supreme Court correctly articulated Idaho law, no such act exists because Idaho law itself dictated the outcome. As a result, Pizzuto cannot concede the Idaho Supreme Court's articulation of Idaho law and yet still impute the asserted deprivation of liberty to the Idaho Supreme Court.

Applying AEDPA's deferential standard, Pizzuto has not met his burden of showing that the Idaho Supreme Court's decision as to his federal due process claim was so erroneous it was "beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. We conclude that the Idaho Supreme Court could have reasonably denied Pizzuto's due process claim on the ground that he failed to show the deprivation of a constitutionally protected liberty interest. Indeed, any *other* determination as to the alleged

denial of a federal due process right would have been manifestly *unreasonable*.  Thus, the district court properly denied habeas relief.

## E

Pizzuto urges an altogether different analysis.  The relevant clearly established federal law, he contends, is not limited to those cases involving state clemency applicants. Pizzuto presses that we should look to Supreme Court precedent involving "arbitrary state action in general."  To that end, he invokes cases involving entitlements, *see*, *e.g.*, *Goldberg v. Kelly*, 397 U.S. 254 (1970) (welfare benefits); *Arnett v. Kennedy*, 416 U.S. 134 (1974) (government employment), and other contexts where a statute's use of mandatory language creates a liberty interest protected by the Due Process Clause, *see, e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 557–58 (1974) (good time credits); *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 11–12 (1979) (parole).

Pizzuto's reliance on these cases is misplaced.  Idaho law does not contain mandatory language guaranteeing a binding commutation decision by the Commission.  To the contrary, the Idaho Constitution makes the Commission's authority expressly contingent on statutory limits.  *See Pizzuto*, 518 P.3d at 807–08.  Section 20-1016 requires the Governor to approve the Commission's commutation recommendation when the maximum sentence is death or life imprisonment. *See* Idaho Code § 20-1016(2).  And the Idaho Supreme Court upheld this gubernatorial non-approval as consistent with the State's Constitution.  *See Pizzuto*, 518 P.3d at 809.

Because Pizzuto accepts this interpretation of state law as correct, his contention that the Idaho Constitution contains "a mandatory directive" that the Commission alone

must render commutation decisions is unavailing.  As is his argument that the Idaho Supreme Court *itself* "enshrined" in the State's Constitution an expectation "that the Commission . . . would render commutation decisions." Idaho law does not create the constitutionally protected liberty interest that Pizzuto claims; nor did the Idaho Supreme Court create such an interest in interpreting state law.

Against this backdrop, the Idaho Supreme Court could have reasonably concluded that its decision did not violate Pizzuto's right to due process.  Thus, the Idaho Supreme Court's rejection of Pizzuto's claim, raised in his rehearing petition, was not contrary to, nor did it involve an unreasonable application of, federal law.  *See* 28 U.S.C. § 2254(d)(1).

## V

For these reasons, we **AFFIRM** the district court's denial of habeas corpus relief.